**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEREMIAH BUSH | : | |
| | : | |
| Appellant | : | No. 376 EDA 2020 |

Appeal from the PCRA Order Entered January 13, 2020
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0001940-2009

BEFORE: DUBOW, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED AUGUST 07, 2020**

Appellant Jeremiah Bush appeals the order of the Court of Common Pleas of Chester County denying his petition pursuant to the Post-Conviction Relief Act (PCRA).[1] For the reasons set forth below, we find Appellant is not entitled to collateral relief. As such, we affirm the PCRA court's order.

Appellant was charged in connection with the October 21, 2006 murder of Jonas ("Sonny") Suber (hereinafter "the victim"), who was shot eight times in his home in Coatesville, PA. The Commonwealth accused Appellant of driving co-defendant Eric Coxry to the victim's home and acting as a getaway driver after Coxry shot the victim. Affidavit of Probable Cause, 2/20/09, at 1.

At a jury trial, Appellant was implicated in the murder plot through the testimony of Clarence Milton, April Brown, and Robert Matthews. Milton

---

[*] Former Justice specially assigned to the Superior Court.
[1] 42 Pa.C.S.A. §§ 9541-9546.

testified that he had contact with Appellant shortly before and after the victim was shot. Notes of Testimony (N.T.), 5/15/13, at 476-84. On October 20, 2006, the day before the murder, Milton encountered Appellant and Coxry at a known drug house owned by Keisha Washington in Coatesville, PA. *Id.* at 476. Milton recalled that Coxry was flashing a .45 caliber pistol and discussing a "beef" between the victim and Duron Peoples. *Id.* at 479-80. Milton heard Coxry bragging that Peoples was going to pay him $20,000 to "take care of the situation."[2] *Id.* at 476, 480-81. While Coxry and Appellant left Washington's residence at different points that night, Milton remained there and fell asleep.

The next morning, on October 21, 2006, Milton again saw Appellant at Washington's residence. When Milton asked Appellant where he had been, Appellant indicated that "they went and took care of that situation." N.T., 5/15/13, at 483. Milton pressed Appellant for more information, asking Appellant who "they" were and what the "situation" was. Appellant indicated that he and Coxry and murdered the victim. *Id.* at 484. While Appellant clarified that he did not shoot the victim, he admitted that he acted as the getaway driver. *Id.*

---

[2] Duron Peoples and Shamone Woods were also charged in connection with the victim's murder. In addition, there are multiple witnesses that testified to the complicated set of facts that surrounded the victim's murder. For the sake of simplicity and clarity for the reader, we have limited our discussion of the factual background to the information necessary to resolve Appellant's claims on appeal.

April Brown also agreed to testify for the prosecution and similarly indicated that she spoke with Appellant at Keisha Washington's house on October 21, 2006, the night after the victim's murder. N.T., 5/14/13, at 375-384. Brown recalled that she was upset and confused as she had been stopped by police, who subsequently confiscated her vehicle. *Id.* at 375-76. In response, Appellant became "paranoid" and apologized to Brown for using her car that morning. *Id.* at 376-77. As Brown was unaware that Appellant had taken her car, she pushed Appellant for more information. Appellant indicated that he had taken Coxry in Brown's car to handle "some business." *Id.* at 377. At that point, Appellant became evasive about Brown's line of questioning and directed her to talk to Coxry. *Id.* at 377-83.

When Brown contacted Coxry, he asked her to get the car back, refused to speak about the matter over the phone, and directed her to come speak with him in person in Philadelphia. N.T. 5/15/13, at 378, 382-83. On October 22, 2006, when Brown met Coxry in Philadelphia, Coxry admitted that he had been paid to shoot the victim, but indicated that it was "either him or me." *Id.* at 382-84.

The Commonwealth also presented the testimony of Robert Matthews, Appellant's cellmate in prison. Matthews claimed that Appellant shared with him that he had been implicated in a murder-for-hire plot by April Brown. N.T., 5/15/13, at 565-66. Matthews asserted that Appellant indicated that Brown and the victim's wife "needed to be gotten rid of" and asked Matthews to kill the women when he was released from prison. *Id.* at 566-67, 573. As

such, Matthews wrote a letter to the prosecutor's office detailing that Appellant had asked him to harm these women. *Id.* at 579-581.

On May 16, 2013, the jury convicted Appellant with first-degree murder, second-degree murder, criminal conspiracy (two counts), burglary, and aggravated assault. On May 29, 2013, Appellant was sentenced to life imprisonment without the possibility of parole for the first-degree murder charge pursuant to 18 Pa.C.S.A. § 1102(a) along with concurrent sentences of eighteen to forty years' imprisonment for one of the conspiracy charges and four to eight years' imprisonment for the burglary charge. Appellant filed a post-sentence motion which was subsequently denied. On February 4, 2015, this Court affirmed the judgment of sentence and on June 11, 2015, our Supreme Court denied Appellant's petition for allowance of appeal.

On February 26, 2016, Appellant filed a *pro se* PCRA petition.[3] The PCRA court appointed Appellant counsel, who filed an amended petition on June 13, 2018. On February 26, 2019, the PCRA court issued notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. On January 13, 2020, the PCRA court dismissed Appellant's petition. Appellant filed a timely appeal and complied with the PCRA court's direction to file a

---

[3] Appellant's petition meets the PCRA timeliness requirements. Generally, a PCRA petition "including a second or subsequent petition, shall be filed within one year of the date the judgment of sentence becomes final." 42 Pa.C.S.A. § 9545(b)(1). A judgment of sentence becomes final at the conclusion of direct review or the expiration of the time for seeking the review. 42 Pa.C.S.A. § 9545(b)(3).

concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issues for our review on appeal:

A. The PCRA Court erred by denying Appellant an evidentiary hearing and post-conviction relief on his claim alleging that he was entitled to a new trial predicated on a ***Brady*** violation committed by the Commonwealth for the reasons set forth in Issue III of the amended petition filed by Teri Heimbaugh, Esquire.

B. The PCRA Court erred by denying Appellant an evidentiary hearing and post-conviction relief on his claim alleging that trial counsel was ineffective for failing to impeach Clarence Milton with available impeachment evidence.

C. The PCRA Court erred by denying Appellant an evidentiary hearing and post-conviction relief on his claim alleging that trial counsel was ineffective for failing to timely object and move for a mistrial or cautionary i[n]structions when the prosecutor elicited hearsay from Clarence Milton.

D. The PCRA Court erred by denying Appellant an evidentiary hearing and post-conviction relief on his constitutionally based claim alleging that trial counsel was ineffective for not presenting accurate law with regard to counsel's attempt to have suppressed Robert Matthews' testimony.

E. The PCRA Court erred by denying Appellant an evidentiary hearing and post-conviction relief on his claim alleging that trial counsel was ineffective for failing to object when the prosecutor elicited irrelevant and highly prejudicial evidence related to guns and drugs, impermissibly bolstering Milton's veracity, and inferring [sic] to Appellant's right to remain silent.

Appellant's Brief, at ii-iii (reordered for ease of review).

Our standard of review is well-established:

[o]ur review of the grant or denial of PCRA relief is limited to examining whether the PCRA court's findings of fact are supported

- 5 -

by the record, and whether its conclusions of law are free from legal error. **Commonwealth v. Cox**, 636 Pa. 603, 146 A.3d 221, 226 n.9 (2016). The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions. **Commonwealth v. Burton**, 638 Pa. 687, 158 A.3d 618, 627 n.13 (2017).

**Commonwealth v. Small**, 647 Pa. 423, 440–41, 189 A.3d 961, 971 (2018).

Further,

A petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceedings.

**Commonwealth v. Postie**, 200 A.3d 1015, 1022 (Pa.Super. 2018) (*en banc*)

(citation omitted).

First, Appellant claims the PCRA court erred by dismissing his claim that he was entitled to a new trial based on his assertion that the Commonwealth withheld exculpatory evidence, violating **Brady v. Maryland**, 373 U.S. 83, 83 S.Ct. 1194 (1963). We are guided by the following precedent:

In **Brady**, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." **Brady**, 373 U.S. at 87, 83 S.Ct. at 1196–97. The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, **United States v. Agurs**, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976), and that the duty may encompass impeachment evidence as well as directly exculpatory evidence, **United States v. Bagley**, 473 U.S. 667, 676–77, 105 S.Ct. 3375, 3380–81, 87 L.Ed.2d 481 (1985). Furthermore, the prosecution's **Brady** obligation extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution. **Kyles v. Whitley**, 514 U.S.

419, 438, 115 S.Ct. 1555, 1568, 131 L.Ed.2d 490 (1995); ***Commonwealth v. Burke***, 566 Pa. 402, 781 A.2d 1136, 1142 (2001).

On the question of materiality, the Court has noted that "[s]uch evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" ***Strickler v. Greene***, 527 U.S. 263, 280, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999) (quoting ***Bagley***, 473 U.S. at 682, 105 S.Ct. at 3383). The materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions. "Rather, the question is whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" ***Strickler***, 527 U.S. at 290, 119 S.Ct. at 1952 (quoting ***Kyles***, 514 U.S. at 435, 115 S.Ct. at 1566). "Thus, there are three necessary components that demonstrate a violation of the ***Brady*** strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued." ***Burke***, 781 A.2d at 1141 (citing ***Strickler***, 527 U.S. at 281–82, 119 S.Ct. at 1948).

Importantly, the Court has noted that the duty imposed upon the prosecution under ***Brady*** is a limited one. ***See***, ***e.g.***, ***Weatherford v. Bursey***, 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977) ("[t]here is no general constitutional right to discovery in a criminal case, and ***Brady*** did not create one"); ***see also Kyles***, 514 U.S. at 436–37, 115 S.Ct. at 1567 ("[T]he Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense.... We have never held that the Constitution demands an open file policy ...."). This Court has also recognized ***Brady's*** limited requirements, and has noted that ***Brady*** does not grant a criminal defendant unfettered access to the Commonwealth's files. ***See Commonwealth v. Edmiston***, 578 Pa. 284, 851 A.2d 883, 887 n. 3 (2004) (defendant has no general right under the Constitution or ***Brady*** to search Commonwealth files); ***Commonwealth v. Williams***, 557 Pa. 207, 732 A.2d 1167, 1176 (1999) ("[T]he Commonwealth is, in the first instance, the judge of what information must be disclosed.... 'Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance.'") (quoting ***Pennsylvania v. Ritchie***, 480

- 7 -

U.S. 39, 59, 107 S.Ct. 989, 1002, 94 L.Ed.2d 40 (1987)); ***Commonwealth v. Counterman***, 553 Pa. 370, 719 A.2d 284, 297 (1998), *cert. denied,* 528 U.S. 836, 120 S.Ct. 97, 145 L.Ed.2d 82 (1999) (***Brady*** is not a general rule of discovery in criminal cases).

***Commonwealth v. Lambert***, 584 Pa. 461, 470–71, 884 A.2d 848, 853–54 (2005).

Specifically, Appellant claims the Commonwealth failed to provide the defense with a statement that Khalil Bell made to Philadelphia police officers in February 2011 before Appellant was tried in this case in Chester County in May 2013. Bell is the brother of Clarence Milton, the witness that testified that Appellant told him that he served as Coxry's getaway driver after the victim's murder. Bell did not testify at Appellant's trial.

In support of this claim, Appellant presented an affidavit from Bell, dated August 22, 2017, indicating that Bell told the officers in February 2011 that Appellant had no involvement in the victim's murder. Bell asserts in the affidavit that "[n]ever did I make any incriminating statements against Jerimiah [sic] Bush in regards to this homicide case." Bell Affidavit, 8/22/17, at 1.

Bell asserts that the officers who took his statement told Bell to stop claiming Appellant was not the getaway driver as they intended to prosecute Appellant for the victim's murder. Bell contends that he signed a statement that the officers had drafted without reading it as he believed he would be given favorable treatment with respect to his own unrelated criminal charges.

Bell characterizes his February 2011 statement as a "lie," and asserts that he wishes to recant this statement. *Id*.

Appellant suggests that, had the Commonwealth disclosed Bell's statement to the defense, Appellant could have shown that the police were only interested in obtaining evidence to falsely implicate Appellant and used unduly suggestive and coercive interrogation tactics to obtain statements from both Bell and Milton. Moreover, Appellant argues that the statement would have allowed the defense to have "more effectively cross-examined and impeached the detectives." Appellant's Brief, at 57. Further, Appellant wishes to investigate Bell's interrogation further as he indicates that "[w]ho knows what other evidence was disclosed by other witnesses that was not documented by the detectives." *Id*.

However, Appellant does not show how Bell's alleged statement would be considered favorable to the defense as it does not constitute exculpatory or impeachment evidence. Neither Bell nor Appellant discussed the possible content of the statement as they assert that Bell signed the statement without reading it. However, as Bell wishes to recant this statement which he characterizes as a "lie," Bell suggests that statement is contrary to his current viewpoint that Appellant had no involvement in the victim's murder and actually implicated Appellant in the victim's murder. In addition, Appellant fails to show how a review of Bell's statement would lead to an inference that Bell was subjected to coercive interrogation tactics.

Even assuming this evidence could be considered favorable to the defense, Appellant has not shown that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." **Lambert**, **supra**. We emphasize that our Supreme Court has characterized recantation testimony as "notoriously unreliable." **Commonwealth v. Johnson**, 600 Pa. 329, 360, 966 A.2d 523, 541 (2009). It would be pure speculation to credit Appellant's claim that the disclosure of Bell's statement (which he admits is untruthful) would have shown the defense that detectives coerced Bell and other witnesses into giving false testimony against Appellant. As such, the PCRA court did not err in rejecting Appellant's claim that the prosecution had suppressed material exculpatory evidence under **Brady**.

Appellant also raises various arguments that trial counsel provided ineffective representation. We are guided by the following principles:

> [a]s originally established by the United States Supreme Court in **Strickland v. Washington**, 466 U.S. 668, [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984), and adopted by Pennsylvania appellate courts, counsel is presumed to have provided effective representation unless a PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome at trial if not for counsel's error.
>
> **Commonwealth v. Wantz**, 84 A.3d 324, 331 (Pa.Super. 2014) (citations omitted). "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." **Commonwealth v. Daniels**, 600 Pa. 1, 963 A.2d 409, 419 (2009).

*Commonwealth v. Selenski*, 228 A.3d 8, 15 (Pa.Super. 2020).

In his second claim on appeal, Appellant argues that trial counsel was ineffective for failing to adequately impeach the credibility of Clarence Milton. As noted above, Milton testified at trial that Appellant confessed to him that he had been involved in the victim's murder by acting as the getaway driver for the shooter, Coxry. Specifically, in his PCRA petition, Appellant presented three letters that Milton allegedly sent to his brother, Khalil Bell, prior to trial. While Appellant does not discuss the language of the first two letters in his appellate brief, Appellant alleges that the language of the third letter suggests that Milton fabricated his testimony implicating Appellant in the victim's murder.

However, Appellant admits that he only gave trial counsel the first two letters as Bell did not send the third letter to Appellant until 2017. Although Appellant concedes trial counsel was not aware of the existence of the third letter at the time of trial, Appellant argues that trial counsel would have discovered the third letter if he had investigated Bell.

In reviewing a claim that trial counsel was ineffective in failing to investigate a witness, this Court has held that:

> [n]eglecting to call a witness differs from failing to investigate a witness in a subtle but important way. The failure to investigate presents an issue of arguable merit where the record demonstrates that counsel did not perform an investigation. It can be unreasonable *per se* to conduct no investigation into known witnesses. Importantly, a petitioner still must demonstrate prejudice. To demonstrate prejudice where the allegation is the failure to interview a witness, the petitioner must show that there

is a reasonable probability that the testimony the witness would have provided would have led to a different outcome at trial.

In this respect, a failure to investigate and interview a witness claim overlaps with declining to call a witness since the petitioner must prove: (i) the witness existed; (ii) the witness was available to testify; (iii) counsel knew of, or should have known of, the existence of the witness; (iv) the witness was willing to testify; and (v) the absence of the testimony was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Pander*, 100 A.3d 626, 638–39 (Pa.Super. 2014).

The record does not support Appellant's assertion that trial counsel failed to investigate Bell. Appellant actually admits in his own affidavit attached to his petition that trial counsel did investigate Bell, but refused to present Bell as a witness at Appellant's trial as a matter of strategy based on his belief that Bell would not provide the defense with favorable testimony. Appellant's Affidavit, at 1 (Exhibit P-10).

With respect to the first two letters that Milton allegedly sent to Bell, Appellant does not develop any analysis to explain how the language used in the first letter suggests that Milton was confessing that Appellant was not involved in the victim's murder. The copy of the second letter in the certified record is illegible.

Further, Appellant failed to support his unfounded assertion that had counsel further investigated Bell, trial counsel would have discovered the third letter and could have impeached Milton with the third letter. Appellant admitted that while Bell gave him the first two letters prior to trial, Appellant

was not aware of the third letter's existence until Bell sent it to him in 2017, more than three years after Appellant's trial had concluded.[4]

Moreover, Appellant's claim fails to meet the prejudice prong of the ineffectiveness test. Trial counsel vigorously attacked Milton's credibility on cross-examination by confronting Milton with the fact that he would receive favorable treatment in his own unrelated criminal charges in exchange for testifying against Appellant. N.T., 5/15/13, at 535-36. As Appellant has not shown that the outcome of the trial would have been different, we decline to find trial counsel was ineffective in this respect.

Third, Appellant asserts that trial counsel was ineffective for failing to timely object and move for a mistrial or a cautionary instruction when the prosecutor elicited hearsay from Milton. Specifically, Appellant claims that Milton improperly testified on redirect examination that Coxry had told him that Appellant acted as his getaway driver. The Commonwealth asserts that the prosecutor's inquiry was a fair response to defense counsel's previous line of questioning on cross-examination.

Our review of the record shows that trial counsel was the first to elicit hearsay from Milton on cross-examination when he asked Milton to discuss his conversation with Coxry:

> [Defense counsel:] You also spoke to Eric Coxry about the Suber murder, didn't you?

---

[4] Appellant did not raise a claim in his PCRA petition that Milton's third letter was after-discovered evidence that entitles him to a new trial.

- 13 -

[Milton:]  Yes, I have.

[Defense counsel:]   And **Eric Coxry told you** that he was the shooter, correct?

[Milton:]  Yes, he did.

[Defense counsel:] And **he told you** that Shamone Woods paid him, right?

[Milton:]  Yes, he did.

N.T., 5/15/13, at 548-49 (emphasis added).

Immediately thereafter, on redirect examination, the prosecutor asked Milton to clarify for the jury that Coxry had also identified Appellant as his getaway driver:

[Defense counsel:]  Did Mr. Coxry tell you what role [Appellant] had in the murder of Mr. Suber?

[Milton:]  Yes, he did.

[Defense counsel:]  What did he say?

[Milton:]  Driver.

*Id*. at 549.

Our courts have held that "a litigant opens the door to inadmissible evidence by presenting proof that creates a false impression refuted by the otherwise prohibited evidence." *Commonwealth v. Nypaver*, 69 A.3d 708, 716 (Pa.Super. 2013) (citations omitted).  We agree with the PCRA court's assessment that defense counsel "opened the door" to this inadmissible testimony by his own line of questioning on cross-examination asking Milton for hearsay testimony about what Coxry had told him about Coxry and Woods' involvement in the victim's murder.  In doing so, the defense created a false

impression that Coxry implicated himself and Woods in the victim's murder, but not Appellant. Thus, it was a fair response for the prosecutor to subsequently request that Milton tell the jury what Coxry had revealed about Appellant's involvement in the crime. Accordingly, this claim fails.

Fourth, Appellant argues that trial counsel was ineffective in failing to attempt to suppress the testimony of Robert Matthews, Appellant's cellmate, who allegedly acted as a jailhouse informant that interrogated Appellant without counsel in violation of the Fifth and Sixth Amendments of the U.S. Constitution. Appellant alleges that after Matthews provided the prosecution with his initial statement, the prosecution "permitted Matthews to return to the same unit where Appellant was incarcerated solely to obtain further incriminating statements from him." Appellant's Brief, at 37.

We acknowledge that:

"the Commonwealth cannot circumvent a defendant's Sixth Amendment right to counsel by sending in an informant to question the defendant in circumstances where police could not do so themselves without the presence of an attorney for the defendant. **Commonwealth v. Franciscus**, 551 Pa. 376, 710 A.2d 1112 (1998). However, where a prisoner volunteers his complicity in criminal activity to a fellow inmate, he does so at his own peril. Indeed, "'the Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached'.... [A] defendant does not make out a violation of that right simply by showing that an informant, either through prior arrangement or voluntarily, reported his incriminating statements to the police." **Kuhlmann v. Wilson**, 477 U.S. 436, 459, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986) [(abrogated on other grounds)] (quoting **U.S. v. Henry**, 447 U.S. 264, 277, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980) (Powell, J. concurring)). A voluntary jailhouse admission to a fellow inmate

- 15 -

is not subject to any more protection than a confession made by the defendant outside of his jail cell to another person willing to notify authorities.

*Commonwealth v. Ogrod*, 576 Pa. 412, 470–71, 839 A.2d 294, 329 (2003).

Our Supreme Court has further clarified that:

> [i]n order to prove such a violation, the defendant must demonstrate that the police and the informant took some action, beyond mere listening, which was designed deliberately to elicit incriminating remarks. Moreover, the defendant must show that the informant was acting as an agent of the government. Individual acts do not become imbued with the character of governmental action merely because they are later relied upon and used by the government in furtherance of governmental objectives.

*Commonwealth v. Hawkins*, 549 Pa. 352, 377-78, 701 A.2d 492, 505 (1997) (citations omitted).

Appellant does not allege that Matthews was intentionally placed in Appellant's cell or that Matthews was acting under an agreement with the police to serve as an informant. There is no indication that Matthews deliberately sought to elicit information from Appellant but rather, Matthews testified that Appellant himself voluntarily divulged information about the charges he was facing to and asked Matthews to kill two of the witnesses to the victim's murder.

Matthews testified that after Appellant shared this information with him in 2009, he wrote to Chester County prosecutors in February 2010 to report concern that Appellant was seeking to harm these witnesses. Law enforcement then met with Matthews in March 2010 to interview him about his allegations. N.T., 5/13/16, at 571, 578-79. The fact that Matthews shared

with law enforcement the information that Appellant voluntarily revealed to him does not lead us to conclude that Appellant's constitutional rights were violated. Accordingly, the PCRA court did not err in finding this claim to be meritless.

Appellant's fifth claim of error contains several issues which we will address separately. Appellant claims trial counsel was ineffective in failing to object when the prosecutor elicited testimony from a witness who indicated that Appellant's co-defendant Peoples possessed drugs and firearms not connected to the crimes charged in this case. However, as Appellant did not raise this claim in his PCRA petition, it was never decided by the PCRA court. *See* Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal"). As such, this claim has not been preserved for appellate review.

Appellant also claims trial counsel was ineffective for failing to object when the prosecutor bolstered Milton's credibility in closing argument. In reviewing claims of prosecutorial misconduct, our courts have held:

> In determining whether the prosecutor engaged in misconduct, we must keep in mind that comments made by a prosecutor must be examined within the context of defense counsel's conduct. **Commonwealth v. Hawkins**, 549 Pa. 352, 701 A.2d 492, 503 (1997). It is well settled that the prosecutor may fairly respond to points made in the defense closing. **See** [**Commonwealth v.**] **Trivigno**, [561 Pa. 232, 244,] 750 A.2d [243, 249 (2000)] (plurality) ("A remark by a prosecutor, otherwise improper, may be appropriate if it is in fair response to the argument and comment of defense counsel") (*citing* **United States v. Robinson**, 485 U.S. 25, 31, 108 S.Ct. 864, 99 L.Ed.2d 23, (1988)); **Commonwealth v. Marrero**, 546 Pa. 596, 687 A.2d

1102, 1109 (1996). Moreover, "prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair." **Hawkins**, 701 A.2d at 503; [**Commonwealth v.**] **Jones**, [542 Pa. 464, 512,] 668 A.2d [491, 514 (1995).]

\*\*\*

It is settled that it is improper for a prosecutor to express a personal belief as to the credibility of the defendant or other witnesses. **Commonwealth v. Koehler**, 558 Pa. 334, 737 A.2d 225 (1999). However, the prosecutor may comment on the credibility of witnesses. **Commonwealth v. Jones**, 571 Pa. 112, 811 A.2d 994, 1006 (2002); **Commonwealth v. Simmons**, 541 Pa. 211, 662 A.2d 621, 639 (1995). Further, a prosecutor is allowed to respond to defense arguments with logical force and vigor. **Koehler**, 737 A.2d at 240; **Commonwealth v. Brown**, 551 Pa. 465, 711 A.2d 444, 454 (1998). If defense counsel has attacked the credibility of witnesses in closing, the prosecutor may present argument addressing the witnesses' credibility. **See Commonwealth v. Fisher**, 572 Pa. 105, 813 A.2d 761, 768 (2002) (rejecting defense contention that the prosecutor improperly vouched for the credibility of prosecution witnesses since "[t]he prosecutor was reviewing the testimony of several prosecution witnesses after [defense] counsel had attacked their testimony, in an effort to counter the argument of defense counsel"); **Commonwealth v. Johnson**, 527 Pa. 118, 588 A.2d 1303, 1305 (1991) (holding that a prosecutor's comments stating that a defendant had lied were neither unfair nor prejudicial when given in response to the comments of defense counsel in relation to the credibility of witnesses, and when they were supported by the evidence).

\*\*\*

Even if a [prosecutor's comments] were an expression of personal opinion, they cannot be characterized as prosecutorial misconduct unless their effect was to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict.

**Commonwealth v. Chmiel**, 585 Pa. 547, 618-21, 889 A.2d 501, 543–45 (2005) (some citations omitted).

In particular, Appellant argues that it was improper for the prosecutor to suggest that "Milton's testimony should be considered credible by the jury

because the government required him to be truthful in order to be eligible for [his own] plea agreement." Appellant's Amended PCRA Petition, at 32. We note that Milton had conceded that his own plea argument in an unrelated criminal prosecution would be affected by his cooperation as a witness against Appellant.

In reviewing the record, we find that the prosecutor's comments constituted a fair response to defense counsel's vigorous attack of Milton's credibility on cross-examination and closing argument. Specifically, defense counsel repeatedly argued that Milton had "incentive to try to save his own skin" and "absolute motivation not to tell the truth." *See* N.T., 5/16/13, at 724-25. Moreover, we cannot conclude that the effect of the prosecutor's statement was "to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict." *Chmiel*, 585 Pa. at 621, 889 A.2d at 545. As such, this claim fails.

Lastly, Appellant claims that trial counsel was ineffective in failing to object when the prosecutor elicited testimony from Milton about his waiver of his Fifth Amendment right to remain silent, which Appellant argues, implicitly attacked Appellant's own decision not to waive this right. However, the PCRA court noted that Appellant had not identified the point in the record where this alleged error occurred and declined to review Appellant's claim further. We agree with this conclusion and find that Appellant has not properly developed this argument for review. *Commonwealth v. Bomar*, 573 Pa. 426, 453, 826

A.2d 831, 847 (2003) (emphasizing that it is "not the obligation of this Court to pore over the lengthy record [to] identify specific instances in the record that may support [an] appellant's generic, unsubstantiated claim").

For the foregoing reasons, we affirm the PCRA court's order dismissing Appellant's petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/20